Good morning, your honors. My name is Rory Gray, and I represent Cedar Park Assembly of God, the plaintiff appellant in this matter. With permission, I'd like to reserve five minutes for rebuttal if I may. All right, we'll try. May it please the court. Cedar Park had an abortion free fully insured health plan. Then Washington passed a new law. Now Cedar Park has an abortion, including plan, and it can't get a comparable abortion free plan back. The record makes absolutely clear that Kaiser inserts abortion based on SB 6219. When Seattle's Jesuit, a religious school complained to the state, Washington said that Kaiser complied with state law. There are. First of all, the clock is not running down. I don't know why, but perhaps our IT person can deal with that. You're correct. It's still it's stuck at 20. It's it's still. Oh, here it's going now. Just just looking at the at the web, which I know isn't part of the record, but it appears that there are. Other carriers that do offer no abortion coverage plans, including Aetna, Providence and Blue Cross Blue Shield, multistate plans. So the fact that Kaiser doesn't offer it. I'm not sure what that demonstrates about the statute. Your Honor, the record is absolutely clear that Cedar Park's insurance broker has been trying to find a comparable abortion free plan that Cedar Park is eligible for for over six years and has been unsuccessful. There's no evidence in the record of any plan that Cedar Park has turned down that is comparable. It simply does not. Well, there's a there's there's there was another plan that was offered and there's a dispute as to whether it was sufficiently comparable. It was lower cost, as I recall. Your Honor, I believe you're referring to the Sigma plan and there's two problems, at least with it. The first is that for a fully insured plan, the evidence in the record completely shows that abortion would still be part of the church's plan, which violates its belief. Now, from 2020 on, I don't understand what you mean by that. I thought the Sigma plan that was offered did not cover abortion. The plan itself. Is that correct or incorrect? No, Your Honor, that's incorrect. It would still have included abortion. And you can look at two E.R. 66 and three E.R. 404 and 420 to 21. Basically, what the state means is that the conscience law would apply. So the abortion coverage would maybe not be technically part of the benefits package, but it would still be part of Cedar Park's plan. And there is absolutely no controversy that that violates Cedar Park's beliefs. And under cases like Masterpiece, the state doesn't get to say that that religious objection is illegitimate. So what we're dealing with here from 2020 on, though, with Sigma, to be clear, they have not been offering the church a fully insured plan for many years now. They've been offering what's called a level funded plan. And those are not comparable to fully insured plans. As the district court found, as the record reflects, they they they have involved a lot more financial risk to the church. And the evidence showed that Sigma continuously upped the charges for that plan by around two hundred thousand dollars a year. So it would quickly become unaffordable. So let me ask you this. In your brief, you argue that SB 6219 burdens your religious exercise because it requires you to pay for a fully insured health plan containing the services that you find objectionable. But to prevail on the merits of your claim, does your theory require you to show that your health plan costs more than an available and comparable health plan that excludes those objectionable services? Put another way, do you claim that the law burdens your religious exercise independent of any demonstrable physical impact on the cost of your health plan? Your Honor, the religious objection is to fertilizing abortion and being involved in abortion coverage. It doesn't depend on monetary payments, although it's heightened by that problem, which we have here. We have direct monetary payments for direct abortion coverage for over six years. Counsel, I need to clarify something. As I understand it, you are not challenging the statute that grants to women in the state of Washington the right to obtain an abortion. That is not part of your claim. So that right exists independent of whether anybody has a health plan or not or what kind of health plan they have. So I'm not sure what about this regulation of insurers changes the calculus for your client because its employees theoretically have the right to obtain the services to which your client has a sincere religious objection. To be clear, Your Honor, we're not contesting what anybody else has to do or wants to do or does. This is all about what Cedar Park is required to do with this law. But that's my question. What are they required to do? They're not required to do anything. No, Your Honor. By the statute, the statute governs insurers. It doesn't directly require anything of your client. So if that's a causation question, Your Honor, then I take you to Diamond Alternative Energy, which shows it makes no difference if we're a direct person regulated by the law. Diamond made very clear that states can use laws as a conduit through regulated parties to affect other people. And here it's the direct chain of commerce that we saw in Diamond, that we saw in Skyline and in Cedar Park One. This is a law that says you insurer may not offer the abortion free plan that pro-life churches require. And so we, as the customer, are directly... The Council doesn't say that. It specifically with the Conscience Statute says, and the regulations say, that whether it's religiously motivated or morally or ethically or otherwise motivated in a secular sense, they're not required to have a plan that covers abortion. The statute does not require that. Your Honor, that's just not true. It's a shell game. It says that it doesn't have to be part of the benefits package, but it still has to be a part of the plan. If you look at the Conscience Law, it directly says that the application to our religious objector cannot result in the plan not including the basic health services, which Washington has said includes... But Providence does not provide abortion, though State of Washington funds any abortions for any Providence insured employees. Yes, Your Honor. So it's clearly not required by SB 6219 because that Providence plan does not include abortion. You have to go outside the plan and go to the state to get a funded abortion. That's true, Your Honor, but that's only because the Conscience Law has a much broader exception for religious health insurers, as well as health facilities and individual health providers. Well, now, if you could have the Providence plan, that would be fine for you, but you can't get it in your area, right? Yes, Your Honor. But that is not because of the statute. It's because of a choice that Providence has made. So why is that traceable to the statute? It doesn't make any difference, Your Honor, because the problem is traceable to the statute. We're talking about one little tiny solution that's not available to us. That the state protects other people's free exercise rights, i.e., Providence, the one religious insurer in the state, doesn't mean that we aren't being harmed by this law. There is no evidence whatsoever that Cedar Park can access an abortion-free plan. In fact, all of the evidence is to the contrary. Your generally applicable analysis cites exemptions from the Conscience Statute, definitions from the Insurance Code. Do you have precedent that relies on exemptions from other statutes outside the Challenge Law? And if you are relying on these different statutes, then why would the government interest in those statutes be irrelevant? Because even you can see that SB 6219 and the Conscience Statute operate together. So why would we not look at the government interest in the Conscience Statute in this analysis? Well, I think there's at least two questions there. If I could take the first one first, which I think is a question about why are we looking at all the laws together. And that's from Lukumi. If you look at what the court did there, they looked at how all of the laws impacted what the government's interest was and what they were doing to religious folks who were impacted. If you would like another example, I'd say you could look at the Third Circuit's recent decision in Smith v. City of Atlantic City, which is 138 F. 4759, which dealt with some issues that are similar to this one here, specifically pages 771 to 773. But if the analysis requires you to look at the government interest, then why would you say the government interest in the Conscience Statute or in the Insurance Code definitions are irrelevant? I'm not exactly sure what Your Honor is getting at. Could I try and explain why the conscience interest isn't any different for us than it is for anyone else? It's very clear from the testimony here that the conscience law would allow even a secular health provider or a secular health facility to apply a much broader exemption than we get based on a moral objection. And the state has never gainsay that it would apply to their own employee health plans that they can exempt abortion in ways that we can't. Now, their objection is indistinguishable to ours. It's either religious or moral. It's the same impact on the government's interest, which is making sure that there's unrestricted abortion access. So if a person just basically on their own does not believe in abortion, but it has nothing to do with the religious views, you're saying that you're treated differently than they are. Is that my understanding? If they qualify for the broader exemption for providers or facilities in the conscience law, yes. This is a very carefully written law, and it requires a lot of unpacking when you have these two laws going on. And it appears in Washington that Washington thinks that everyone should have access to an abortion. All right. But then there are people, there are churches that believe it's part of their religious view that they have to provide insurance for their employees, but it needs to be insurance without abortion. Now, the fact that you can't get the Providence program and the one that they're saying, okay, let's say you qualify. I want to figure out exactly how that so the person, you won't have to pay for their abortion outright, but then they're provided information as to how to get it. The state doesn't want to pay for it there because that risks their federal funds. And then they want to bill you or tell me how that comes back to you having to pay for it. Well, right now, Your Honor, we are directly paying for abortion coverage through Kaiser. And that's not a standing problem because all the alternative plans were a worse fit for the church's skyline. In terms of how the conscience law works, it's very clear that abortion coverage must be provided by the carrier, but the carrier isn't required to pay for it. And so that leaves Cedar Park as the only other option. Right now, the conscience law isn't even being applied to us. It's never had any impact on the church in terms of the plan that it's had. I guess I'm unclear. If I look at the conscience statute 3E, it just says no individual or organization with a religious or moral tenant opposed to a specific service may be required to purchase coverage for services to which they object. That applies to all employers, all individuals, all organizations, regardless of whether they're religious or not. It's true, Your Honor, but you have to go down to 3B that says the provisions of this section shall not result in an enrollee being denied coverage of and timely access to any service or services excluded from their benefits package as a result of their employers or another individual's exercise of the conscience clause. So there's absolutely no question that under the conscience law, Washington has never disputed that abortion must be part of the church's plan. Well, I guess my problem is that that brings me back to the question I started with. You're not challenging the fact that there is a right of every individual to obtain an abortion separate and apart from these statutes that you're challenging. And so the section that you are referring to merely says the fact that an entity or a person opts out of covering a service to which they object doesn't reduce the individual right to obtain the service. And I don't really see how that is. I guess I just don't see how that's a problem. Well, Your Honor, the church's religious belief is that it is facilitating abortion by covering it through the church's plan. There is absolutely no argument otherwise that there would be no abortion coverage here, but for Cedar Park seeking out an insurer, negotiating a terms and signing a contract. So the church is directly responsible for this. It's not directly responsible under the policy that it has. But the question is whether there are other alternatives and whether there is sufficient information, I would say, in the record about what other alternatives have been sought to. And also, if this is the choice of the insurers and not of the state, again, I'm not sure how that is a violation. So why don't you maybe it would help if under your free speech claim, you have to show burden. You have to address neutrality and general applicability. Correct. So why don't you encapsulate your argument on that, how you prevail on those, because that's how you have to get to strict scrutiny. Would you agree under rational basis you're not going to win? We don't argue for rational basis, Your Honor. Well, I know you don't argue for it, but I didn't see any argument in your briefs on rational basis. So effectively, it seemed like you were conceding that if rational basis review applies. Our religious autonomy claim would prevail. It requires strict scrutiny. So I'd refer you to Yakima for that. In terms of Kaiser including abortion due to anything besides the law, that's just not true. You can look at 2ER71 and 4ER686. And in terms of the Conscience Law somehow meaning that abortion isn't covered, the state people testified otherwise at 4ER686. Okay, but you have to show burden. We talked about that. You have to show that it's not neutral and you have to show general that it's not generally applicable, right? To get to strict scrutiny. Burden very quickly is very easy here. It's just pressure for the church to change its behavior and violate its beliefs. It's been more than pressured to change its behavior and violate its beliefs. Okay, let's go past burden. I never got an answer to my question. Under general applicability, we have to look at whether secular conduct is endangering the government interest that the rules were designed to protect. And in your brief, you say, well, just ignore the purposes of the Conscience Statute or the Washington General Insurance Code and just look at the purpose or the government interest in SB6219. What we're saying, Your Honor, is that the purpose is equally served by the Conscience Law. In fact, it's better served by giving us an exemption that it's given to providers and facilities and religious insurers than it is by denying one. So I don't think there's any argument that the purpose helps there. What we're saying is that the government's interest in the law, if it allows secular conduct that undermines that interest in a similar way as granting exemption to Cedar Park would, the law isn't generally applicable. That's clear from just one exemption, if you don't even have to look at all the others, the one to preserve federal funds. That says any health plan can be exempt from the abortion coverage requirement, even though it still has maternity coverage. I'm sorry, let me be more specific. You can see that the federal law governs Medicare and TRICARE and would preempt state laws. Is that right? Let's just go through your actual specific exemptions or exceptions. You can see that, correct? I would highlight the exception in the statute itself to keep federal funding, which whether you look at that as a system of individualized exemptions or just treating some secular conduct. That impacts the state's interest in a similar way, better than some religious conduct. Either way, it's not generally applicable. The same. Well, let's go specific. You also raise these employer-sponsored, self-funded health plans. You can see that ERISA preempts state regulation for these plans, correct? And the free exercise clause, Your Honor, preempts laws that violate the church's religious autonomy. It's no different. Federal law controls either way. And I'd refer, Your Honor, to Smith again from the Third Circuit. You would agree that for your raising car accident policies, short-term plans, you would agree that those aren't intended to provide comprehensive medical care. Under FCA, Your Honor, the purpose of the exemption makes no difference. It's whether the secular activity and the religious activity have a similar impact on the state's asserted interest. And here they do. There's no—the state conceded that those can pay for— But the state has no ability to regulate it because it's preempted. There's no preemption, Your Honor, for property casualty liability plans. What about ERISA preemption for the self-funded health plans? Again, that doesn't make any difference under FCA or Fulton, Your Honor. It says whether there's a system of individualized exemptions or whatever the exemption is. You don't look back at, well, is there a federal law that might be generally applicable even though this one isn't? And Smith from the Third Circuit says that. So can I just ask you a quick question about Stormins? You say that that's an outdated circuit decision, but last year it was cited in multiple published opinions. So if Stormins remains good law, why wouldn't you lose on general applicability? Your Honor, Stormins is not good law. FCA is an en banc decision by this court. It controls. And there's absolutely no argument that Washington law is generally applicable under FCA or Fulton or Tandon or Diocese of Brooklyn or a bunch of other cases. OK, so but looking at FCA individualized exemptions, here it's just looking at whether federal funding would be jeopardized. FCA had case by case, common sense, ad hoc, no defined written list of criteria. And there were examples of other organizations that discriminated based on gender, based on ethnicity that were granted exemptions. It seems completely an opposite to me. It's not, Your Honor. The record shows that Washington applies it on a case by case basis. That's 3 E.R. 308 to 09 and that they use significant discretion in doing so. That's 4 E.R. 653. But how is a legal determination of whether federal funding would be eliminated? An inherently discretionary, non-objective decision. There's, Your Honor, the reason it's an individualized exemption based on the secular reasons for it. It's saying it's OK in that circumstance to have maternity coverage, but not abortion coverage, because it's important to keep federal money. But you can't prioritize. That's not that's not. Look, you would agree that whether you're going to lose your federal funding or not is not determined by whether there's a religious objection or belief at issue. Correct. If we're talking about the Weldon Amendment and the church amendments, Your Honor, they apply to moral objections, anti-religious objections. So it does count as as it could be favoring some secular. But the legal determination about whether federal funding would be eliminated. That's not one that is discriminating based on religious belief. It's a legal determination by an attorney as to whether this law would be triggered or not. Well, FCA says, Your Honor, you don't have to have religious targeting. This isn't an intent inquiry. It's just whether you're treating secular better than religious. And here they clearly are. The state's picking winners and losers based on whether it thinks the interests are important enough. And it's saying that Cedar Park's religious autonomy and its exercise objections just don't don't reach that level. And that's what Fulton and FCA says you can't do. Could I reserve the rest of my time, Your Honor? Oh, you have no time. Oh, I believe you've gone into overtime. But I'm going to give you some rebuttal time because we've asked a lot of questions. So I'll give you at least three minutes rebuttal.  And depending on how many questions we have for your friend on the other side. All right. We're ready. May it please the court. Tara Hines on behalf of the state defendants. Cedar Park is not required to pay for or provide insurance coverage for abortions under Washington law. Its claims thus fail for three reasons. First, Cedar Park does not have standing because Kaiser Permanente is free to offer Cedar Park an abortion excluding plan. Second, SB 6219 does not prohibit the free exercise of religion because unlike every other case that Cedar Park cites, there is no coercion by the state here either directly or indirectly on Cedar Park. And third, SB 6219 is neutral and generally applicable law that comports with the requirements of employment. Could you respond to what your opposing counsel said? The state does make a case by case determination on the federal funding issue. Doesn't have an internal agency review process. It appears to be a discretionary decision and it doesn't appear to have a particularized or objective criteria. So, Your Honor, I would disagree with that characterization. One, it is not a case by case determination as to each claim of an exemption. It is a case by case determination only when there is a trigger for the federal funding option. So, already it is a categorical exemption that is defined in the statute. It doesn't say you have broad exemption or you have broad discretion like what was at issue at Fellowship of Christian Athletes. There, those teachers had absolute discretion and they got to choose which reason was worthy of solicitude. That's the concern in Fulton. That's the concern in Fellowship of Christian Athletes. Here, what you have is a statute that says very narrowly this exemption only applies in a very narrow set of circumstances. When your federal funding would be at risk and to the minimum extent necessary to comply with that federal funding condition. That's not a broad exemption. That is not a broad discretionary judgment that allows the state to discriminate against religious. But the deposition testimony of the insurance commissioner was that there wasn't an internal process within the office to make that determination. So, the testimony was they would refer this question to their lawyers, which is absolutely the right determination to make. This is a legal judgment. Is your federal funding at risk? And what is the minimum, you know, how can you honor that federal funding condition to the minimum extent possible? Those are fundamentally legal questions, but that doesn't mean that these are broadly discretion. That these grants commissioner discretion to decide your reason is adequate, your reason is not. It is not a facade for religious discrimination. It requires expert judgment. It requires legal judgment. But that does not mean that this is purely discretionary. But doesn't that judgment include discretion? I mean, Your Honor, the point is there has been no court that has ever held that a state must be willing to sacrifice all of its Medicare funding, all of its Medicaid funding in order to have a generally applicable law. That would be an astounding conclusion. And there is no other way to determine whether or not a federal funding condition is complied with. That is fundamentally a legal determination. And yes, there is some judgment in that. There may be, yes, obviously there's going to be some judgment in that. But that does not mean that the state has the ability to determine which reasons are worthy of solicitude and which reasons are not. It is still a defined parameter. It is a defined exemption. It is not a guise for religious discrimination. And in fact, most of the exemptions that would apply in that context are to honor federal conscience rights. Well, let me ask you this. If you get into the analysis of the burden neutrality and general applicability, when you look at neutrality, a law must not be passed judgment upon or presuppose the illegitimacy of religious beliefs and practices. In SB 6219, the legislative findings of Section 1 claim that all, I underscore ALL, restrictions on abortion coverage interfere with a woman's personal private pregnancy decision making with his or her health and well-being and with his or her constitutionally protected right to safe and legal medical abortion care. How would we consider this declaration in assessing the law's neutrality? So, Your Honor, SB 6219 made clear the sponsors when they passed it that this was passed in the backdrop and in conjunction with the conscience objection statute. So while SB 6219 was protecting access for Washington citizens to abortion coverage, insurance coverage, it was at the same time honoring the religious objections or moral objections that people had. I'm not sure. I think, practically speaking, if we find that it's neutral, it means that any state can enact legislation that clearly adopts the secular viewpoint of a highly contested moral and religious, so long as the law's text is careful not to mention religion. Don't you think such a situation represents at least a subtle departure from neutrality, which is prohibited in Masterpiece Cake Shop? Absolutely not, Your Honor. And the reason why is this is the exact compromise that was entered into between churches and the federal government in the ACA contraceptive mandate case. So in Hobby Lobby, when the court said you cannot have coercion, you cannot force employers to provide contraceptive coverage to which they object, this was the compromise that Hobby Lobby was looking for. This was the compromise that Little Sisters of the Poor asked for. This was the compromise that they got was, yes, there's going to be coverage that's provided, but by no action by the church. Nothing. You are not required to do anything. You're not required to contract for abortion services. You're not required to pay for them. You're not even required to provide notice of it. And Cedar Park keeps saying they want what Providence has. They have better than what Providence has because Providence actually provides notice to the employees that would be covered. Well, are they paying for abortion right now? Is Cedar Park paying for abortion right now? Cedar Park is because Kaiser has made an independent decision to only offer a policy that directly covers abortion services. And I think that's really important because many insurers are offering a policy that exclude abortion coverage because that's perfectly legal under Washington law. It is absolutely legal to do so. Washington law is not forcing Kaiser Permanente into offering that type of policy. And so this whole notion of the indirect facilitation that Cedar Park has talked about is really purely hypothetical to this case in the first instance, because Cedar Park is going to stay with Kaiser Permanente. They have made absolutely clear that they do not want to leave Kaiser Permanente because they want to keep Kaiser's network of providers and because they've got concerns about other insurances pricing policies. So for reasons having nothing to do with abortion or the state law, they're staying with Kaiser Permanente. If in reality, if in reality, there's nothing affordable for them, even close, you know, that they can't self-insure, that they can't, that Providence policy isn't available. If, in fact, the reality is there's nothing out there that they can afford and it is their religious belief that they should provide coverage to their employees. If there's no policy out there that that would even come. I mean, we're not talking about a couple of dollars. We're talking about there's nothing available. Can it is your argument? It's not really speculative, then they don't have a choice. Your Honor, Kaiser is free under state law to offer the policy that Cedar Park wants. The fact that it is chosen not to offer Cedar Park that policy and Cedar Park wants to keep the Kaiser policy is not due to SB 6219. And there was a very specific email, 5ER768, in which this is the entire email that Cedar Park rests its entire case on was in August 2019. They asked Kaiser if implementing regulations are passed that allow an exemption for churches like Cedar Park, will you change our policy? And Kaiser said yes at that time. And those implementing regulations came in December 2019, which said that SB 6219 does not impair or diminish any rights available under the Washington Conscience Ejection Statute. After 2019, did Cedar Park reach out to Cigna or any other health insurance plans? There is no record that they looked for any alternative options. There is no evidence that they specifically reached out to Kaiser. So they want to keep a Kaiser plan, and there is not one shred of evidence that they went back to Kaiser and said, hey, in 2019, you said you would change our policy. Why aren't you doing that? There is no evidence. Excuse me, is there any evidence that they checked with other insurers that typically allow these plans like Aetna or Blue Cross Blue Shield multi-state plans? Is there any evidence that they made inquiries beyond Cigna and Providence? So the only evidence is a very conclusory declaration that was offered by their broker that said, in a conclusory fashion, I've looked for a policy, and I can't find one that meets Cedar Park's needs. And we don't really know what that means. That's just a conclusion. We're on summary judgment, though, right? We're on summary judgment. Am I correct here? Yes. So some of the arguments you're making may be why they lose at trial, but the question is, do you win at summary judgment, right? And, Your Honor, there is no evidence. Right now, it's pure speculation. One, that Kaiser Permanente is not offering them an abortion-excluding plan because of SB 6219. Everything in the record, it would be willfully misleading for Kaiser to point to 6219 to say that we are required by Washington law to provide Cedar Park an abortion-including plan. Many insurance companies are not providing it. The commissioner has made clear you don't have to include abortion directly. So it would be willfully misreading law by Kaiser to say that this is required by Washington law. But, importantly, Cedar Park. I'd like to talk to you about general applicability if we're doing that analysis. In your brief, you acknowledged that SB 6219 allows an exception to the abortion coverage mandate whenever enforcement of the mandate jeopardizes the state federal funding. But argue that does not matter because of the importance of federal funds. Aren't you just asking us to assess the reasons why you allow the exception, which Tandon v. Newsom says we're not supposed to do? Tandon does not say you can never determine why the exception is important. Tandon gives you a way of determining whether there is a comparable situation or not. So you look to the policy that's at play to determine whether or not the situation is comparable or not. And in Tandon, when the risk is COVID, the reasons why they were granting an exemption to hairdressers versus churches didn't really matter because the risk there was the COVID exposure to COVID. Here, SB 6219 is trying to provide access to people who might not otherwise have coverage. But it's not going to fundamentally undermine that by losing all Medicare coverage. That would not further the state's interest in being able to provide more coverage to more people. Obviously, if we do a situation where we're violating federal law and we lose billions of dollars of health care coverage, that's going to fundamentally undermine the purpose of that law. It's going to fundamentally undermine the state's interest in providing access to health care. So, of course, the state has to consider whether or not its law is going to jeopardize federal funding. And there has been no court ever that has held that if a state tries to comply with federal funding conditions to the minimum extent required, that that renders a law not neutral or generally applicable under Employment Division v. Smith. Cedar Park's interpretation would make it virtually impossible for the state to ever have an exemption, to ever try to comply with federal laws that preempt state law. It would require the state to engage in all kinds of illegal, unconstitutional behavior. It is not a coherent theory of Tandon and Fulton and fellowship of Christian athletes. What those cases are concerned with is a system of discretionary exemptions that essentially allow the state to determine whose reason is worthy of solicitude. That allows the state to sort of get behind and discriminate against religious exercise and use the exemption factors to be able to do that. Nothing like that is happening in SB 6219. 6219 has two very narrow restrictions, both of which are required by federal law. One is for multi-state plans. The ACA requires multi-state plans to have at least one option that does not include abortion access because of federal conscience rights. Let me ask you this. If your objection is of a secular nature and not of a religious nature, don't you get a better exemption under the law? No, absolutely not. The Washington Conscience Objection Statute applies regardless of whether your objection is secular or it's religious. So there's no better treatment of anyone. And Cedar Park claims that Providence has a better exemption. It does not. The people who Providence objects to paying for coverage for insurance, those employees still have access to abortion coverage. So insofar as Cedar Park is concerned, because Cedar Park is not required to pay for abortion coverage, neither is Providence. Excuse me, is there any case of which you are aware that says that insurance carriers and employers as distinct entities can't be treated differently? No, I am not aware of it. So if a carrier is governed by Section 2A in its capacity as a carrier, as an employer, it's still covered by the same exact thing that Cedar Park is covered by, 2A, correct? Insofar as they have a Conscience Objection Statute, this case, the Ninth Circuit has held that they are not comparable. That a health entity or a health carrier is not the same as an employer with respect to providing abortion, because the health carrier is actually in the business of providing insurance. So you can't compare them. And Cedar Park has waived any sort of appeal with respect to that issue. So they're not comparable. So what is your view on whether Stormont's remains good law? Stormont's remains good law, Your Honor. There was no—Fellowship of Christian Athletes did not explicitly overrule Stormont's. It did not address that. So Stormont's does remain good law. So going back to the issue of this sort of incidental or sort of facilitation, because Cedar Park has really tried to have this multiple different ways. But this notion that SB 6219 facilitates abortion, the determination in Hobby Lobby was that if Hobby Lobby did not have to provide or pay for coverage for contraceptives, then it was not—its religious exercise would not be burdened. That is the exemption that Hobby Lobby was seeking. And that's the exact exemption that is provided under Washington law. It is a misnomer that Cedar Park is required to contract for abortion services. It is not. It is not part of their contract. Under the Washington Conscience Objection Law, they are not required to pay for or provide coverage for abortion services. So SB 6219 places no burden on them. It's not part of their contract. All that is required is a notice by the carrier that says your employer objects to providing this sort of service. And so here's an alternative mechanism for you to obtain that service. That notice is not required to be provided by Cedar Park. It's a burden on the carrier. And so there is no good argument here that SB 6219 requires Cedar Park to do anything. And that's what makes it very different from every single one of the cases that Cedar Park signs. In Hobby Lobby, that was a statute that directly regulated employers. It directly said employers, you must provide this coverage or you face $475 million a year in penalties. That's not what Washington's conscience law does. We respect religious objections. And so those individuals or those organizations like Cedar Park are not required to provide abortion services. And then in those cases, the carrier must provide that access. And Cedar Park is- But who will pay for it then? Who will pay for it? The insurance carriers, what the law says is the insurance carrier cannot require the employer to pay for it. It cannot require it. And Cedar Park has not produced a shred of evidence that their costs would increase. But again, I would really urge the court- This is purely hypothetical. Cedar Park has a policy from Kaiser Permanente. And under Murphy, this court has to look to see whether there's a future injury likely in the future. Because Cedar Park can only seek prospective inductive relief. They have to determine whether Kaiser Permanente in the future will deny an abortion excluding plan to Cedar Park due to SB 6219 and redressable by the injunction that Cedar Park seeks. Cedar Park cannot make that showing. We would ask this court to affirm summary judgment. Do either of my colleagues have any additional questions? No, thank you. All right. Mr. Gray, you can have three minutes for rebuttal. Thank you, Your Honor. I'd like to point out that basically what Washington just said is just not true. It does not reflect the record. Kaiser told Seattle's Jesuit and Cedar Park that it included abortion coverage because of SB 6219. And when Seattle's Jesuit complained to the state, the state said it complied with state law. That's 4ER 684 to 87. In terms of standing, it's important to realize that under... Has Cedar Park made any inquiries of Kaiser since 2019 or of any other insurance provider since 2019? Because your insurance broker's declaration was this is the investigation I conducted in 2019. Is there any evidence or record of seeking out actual other options? The first time we argued the second appeal, Your Honor, we submitted a supplemental affidavit that said that our broker searches every six months for an abortion-excluding plan and there is not one available. And that is clearly supported by all the evidence in the record, which says that despite the conscience law, all fully insured plans cover abortion now. That's 4ER 682. That abortion and coverage is included over religious objections. That's 3ER 404. That the plan actually provides abortion coverage. That's 2ER 254 to 57. Let me ask you, since we're limited in time, is it your position that anytime the government needs to make a legal assessment that the law that is the subject of that legal assessment violates general applicability? Your Honor, what we know is that under FCA and Fulton, if it's a case-by-case analysis based on the reasons for the secular exemption, that it is not generally applicable. I need to get to Hobby Lobby and Little Sisters, Your Honor, because what the other side is saying about that is just completely wrong. It's just completely false. Under federal law, churches have always been completely exempt from the ACA requirements. So neither Hobby Lobby nor Little Sisters had anything to do with them. They were exempt based on church autonomy, which we would say is exactly what Yakima requires here. In terms of Kaiser, we don't have to accept a worse fit for our needs. That's from Skyline and Oregon Right to Life. So the idea that we have to accept a plan that is hundreds of thousands of dollars more a year or isn't fully insured and exposes the church to millions of dollars in risk is just not a legally sound argument. In terms of funding-based exemptions, Washington just says that it should be able to treat religious objections worse because secular funding is important and free exercise isn't. And that's exactly what FCA and Fulton disallow. In terms of the equal protection and free exercise, Your Honor, those analyses are completely different. So under the conscience law, it makes no difference if they can distinguish the person for equal protection purposes, which is treating like people alike. That doesn't answer the free exercise question, which is whether the activity the government allows implicates the government's interest in a similar way. And here, exempting a religious health care provider facility or insurer implicates the government's interest in exactly the same way as exempting Cedar Park for religious reasons. Thank you, Your Honor. All right. Do either of my colleagues have any additional questions? I do not. Thank you. All right. Thank you both, counsel, for your excellent argument in this case. And the case will stand submitted at this time, and we are in recess. So I believe that our IT person will, you're allowed to hang up and will be removed to the roving room. Thank you. Thank you both for being here today and for excellent argument.
judges: GRABER, CALLAHAN, KOH